My name is George Moyer. I'm an attorney from Madison, Nebraska, which is a little agricultural county seat up in the northeast corner. And I generally end up representing people who are hurt. And that's who I'm representing today. The issue before the court, I believe, is, in the first instance, what is the preemptive effect of the Carmack Amendment, which is a statute that was first adopted in 2006 by the Congress and intended to regulate shipments between a carrier and a consignee or a shipper? Now, I've read that Congress says what they mean, and they mean what they say. And that when you're considering preemption, you have to begin with the words of the statute. And what this statute talks about is a shipper entrusting a shipment to a carrier. And that carrier, under that statute, becomes liable. And any other carrier that delivers the property becomes liable to the shipper for any damage or delay or loss in the course of the shipment. Damage, delay, or loss to property. That's what it says, property. The property that's entrusted to the carrier. So the first thing that we got to understand here is this is not a shipper-carrier case. My client got hit by property that fell out of a truck, landed on his head, caused a concussion, broke his shoulder, his left arm, left him with a permanent injury. But he's not property. The damage to him was damage to a person. Did any defense counsel explain or opine to the district court anywhere in the record what remedy your client has for his personal injuries? No. That never came up. Looks like their answer is none. That's actually what it is. I'll be very interested in what they say to that. But I cannot discern any remedy in any venue anywhere that would survive this preemption decision. Yeah, I think you're right. As a matter of fact, we argued that to the court below. But we didn't get very far there. Now, as a matter of fact, a case like this has been in the United States Supreme Court, was in the United States Supreme Court back in 1919. And it's Chicago, Rock Island, and Pacific Railroad versus, I always have trouble with this guy's name, Moucher. And Moucher was working for the circus, the Ringling Brothers Barnum and Bailey Circus, which had been performing in Lincoln, Nebraska. And the circus made a deal with the railroad to transport the circus and its employees to its next location, which was over in Iowa. And on the way to Iowa, the Rock Island let one of its other trains run into the circus train. And they hurt Moucher. And at every stage of the proceedings, the case started in the state court. At every stage of the proceedings, they argued, the railroad argued, that the Carmack Amendment protected them from any liability in this case. And then Nebraska's courts gave that short shrift. And Moucher had a verdict, a rather handsome verdict for that time, $10,000. And the railroad persisted even after that was affirmed by the Nebraska Supreme Court. And they took it to the Supreme Court of the United States. And that court said, this claim rests not on the contract of carriage, but upon the general right of human beings not to be injured by the negligence of another. And that case is very close to the case that we have here. Mr. Moyer, let me ask a question about that. Opposing counsel argues that the Moucher case has been superseded by the harm-based versus and the conduct-based approaches to preemption. How do you respond to that? I'm sorry, Your Honor. I couldn't understand what you said about what case was it. Opposing counsel has argued that the Moucher opinion has been effectively superseded by the conduct-based versus harm-based approach to preemption. What is your response to that? Well, my response to that is, why are we getting so confused by the harm-based and conduct-based analysis? What you do here, according to all the Supreme Court cases on preemption that I've read, is you look at the words of the statute. And you start with that. Well, the first answer is none of those cases are Supreme Court cases. Well, that's true, too. Yeah, those circuit courts didn't have the authority to supersede. Yes, Your Honor, I agree with that, too. Blink and slip by Moucher. And the second answer that comes to my mind in researching this is that all of those conduct and harm-based analyses are in cases, to my knowledge, every one of them involved a claim by a shipper for consequential damages, emotional distress. Right. It's a shipper-carrier case. So those cases are irrelevant. That's right, because they're shipper-carrier cases. The shipper-carrier cases don't apply here. My guy wasn't a shipper. He wasn't a carrier. He wasn't a consignee. He was a poor fellow who went out to unload a truck one morning, opened the door, and the load fell on him. That's what he was. So I don't understand how any of these shipper-carrier cases can have any application to his situation. His situation is Moucher's situation. And therefore, I don't think that the lower court erred when she determined that the Carmack amendment had any application to this matter. Now, there's another argument here that is made by a party, a defendant, who is clearly a warehouseman. And I'd like to address that argument. We've got cases that are old, yes, but they haven't been superseded by any new modern analysis. And I think the best of those two cases is Central Sticks, and it's Dutch. Now, I don't know what that means. But it's versus Alabama State Docs. Alabama State Docs was acting, in that case, as a warehouseman. And Central Sticks lost some property that had been entrusted to them. And because it imposes strict liability, they thought that the Carmack amendment would apply just beautifully to that. And they asked the court, in that case, to apply the Carmack amendment to a warehouseman. Now, we have that here. We have a warehouseman who loaded the truck. And he says, under the statutes that govern commerce now, that we provided a service. And therefore, we became a carrier. Well, usually, the warehouseman wants to remain a warehouseman. And in Central Sticks, the court said, he has traditionally remained a warehouseman. And the Carmack amendment has never applied to him because of the difference between the liability of a carrier and the liability of a warehouseman. And that distinction has been traditionally maintained, apparently, from my search in the federal courts, and should be maintained in this case. Well, what do you make of the statutory language that defines motor carrier and gives a description of entities that could encompass a warehouse? That's a 49.3105. There's a series of services that are described in that statute, which may be furnished by a carrier. And we can go back to Cleveland CC versus Dadelback in 239 US 588, in which the reason for the adoption of that statute dealing with services was explained by the Supreme Court. And they said that the carriers were furnishing these services in the course of their carriage. And the Congress thought that they should control the tariffs and the delivery of these services because it prevented the carriers from taking advantage of shippers by, and of course, we're talking about a time when everybody's tariff controlled what they could get for shipping anything from anywhere. And they thought that this was a way that the carrier was evading their tariff by offering these services and then making extra charges for them. That's Cleveland versus Dadelback. And the court said in that case, we're not going to permit that. These services are rendered by a carrier and they're covered by the tariff. And they're not covered, or we don't cover, warehousemen. So these guys say, well, we loaded the truck. That's a service that can be provided. Therefore, we're a carrier. Well, they don't have a bill of lading. They never issued one. It wasn't their truck. If you look at the definitions there, a motor carrier is a carrier that provides service by motor vehicle, semi-trailer, full trailer, whole description of trailers that are used in the carriage of goods. And this is a warehouseman. All they did was load the truck. Now, that is a service that can be provided by the carrier. Yes, under that statute, I agree. But just doing that service doesn't make them a carrier. They have to issue a bill of lading. And they have to have a motor vehicle. And the motor vehicle has to be pulling a trailer. And they have to actually provide some transport. And they didn't provide any transport beyond moving it from their warehouse to the trailer. So I don't think that argument succeeds at all. And then finally, in the lower court, they did make an argument that the F4A, the Airline Deregulation Act, applied and also preempted this case. But if you go back and look at the case law that's developed under the Airline Preemption Act, personal injuries have not been, not ever been, considered to be preempted by the language of the F4A. Counsel, you only have a little over a minute left for rebuttal. Do you wish to? I'm sorry. I said you only have a little over a minute left for rebuttal. If you can use your time, or you can reserve it. I always do that. I appreciate the court's warning. Thank you. Well, I'll say whatever I've got for rebuttal. Thank you. Mr. Moran? Thanks, Your Honor. May it please the court. The district court properly found that the Carmack Amendment preempted each of the negligence causes of action that the appellant alleged against my client, XBO. The undisputed material facts of summary judgment. Well, I'm not going to listen to anything until you tell me what personal injury claim he has. Thanks, Your Honor. As the court is aware, the F4A is the congressional intent behind enacting the Carmack Amendment was to create. Can you answer the question first, and then give me all the background? Certainly. It would be a Nebraska workers' compensation claim. It'd be the same for any injury claim in any of the 50 states. That's how. He didn't work for your client. He worked for the consignee, Your Honor. And that's another important fact in this case, is that the whole claim arises out of the transportation of the goods. It's the whole movement here that's at issue. The fact that the plaintiff was an employee of the consignee is a critical fact. And so going back to my point, the intent of Congress in enacting the Carmack Amendment was to provide certainty to the transportation industry and interstate movements. What is our liability going to be if we do this, if we move these loads? Counsel, the Carmack Amendment refers to those entitled to recover under the receipt or bill of lading. Is Mr. Fergin entitled to recover under the receipt or bill of lading? I think you have a privity problem here, don't you? A privity problem? Your Honor, I respectfully disagree for this reason. It goes back to Congress intending to take this all, any potential liability arising out of a movement of property across state lines. And it is the claimant's right to file a workers' compensation claim. And to the point that he is not entitled to recover under the bill of lading, then he has no cognitive claim under federal law against the shipper, the carrier. But the point is the Carmack Amendment only applies to those who are entitled to recover under the bill of lading. Is he entitled to recover? As a employee of the consignee, he's not entitled to recover under the bill of lading. But don't you have a privity problem here? Well, no, I think that just the fact that he can't bring a claim under the Carmack doesn't change the preemptive effect of the Carmack Amendment. The Carmack Amendment is this. You say that, but you know, Adams, in 1913, I was amazed at how sophisticated and updated, modern, the Supreme Court's analysis of preemption was. And they carefully moved through the differences between field preemption and conflict preemption and the presumption against preemption, and then clearly defined the preemption of Carmack as total in regards to shipper-carrier relationships, and then reaffirmed that in two or three subsequent decisions. So and you just run off and disregard the statutory language as well as those cases. Your Honor, I respectfully disagree. The US Supreme Court has held for a long time that the breadth of Carmack Amendment is such that it embraces all damages that can arise out of the interstate movement. Well, let's discuss that. You tell me the language. You give me the language in a case that talks about interstate movement as opposed to shipper-carrier relationships. Because I just read them all, Peninsula Exchange, Blish, SE Express, Adams. None of them talk about what you just said. So SE Express v. Pastime Amusement Company, 299 U.S. 28. The Supreme Court described the words of the Carmack Amendment as, quote, comprehensive enough to embrace all damages resulting from any failure to discharge the carrier's duty with respect to any part of the transportation to the agreed destination. And XPO, as within the definition of the carrier in this context. So that overruled, you think, Blish and Peninsula and Adams? That broad language in one sentence? Your Honor, that's our position that it's controlling Supreme Court case law. I'd like to ask about the Macher opinion. On page 21 of your brief, you say it's been superseded. And yet all the cases you cite are circuit and district court opinions. So how is it superseded? It was a misstatement, Your Honor, in the brief. It was an evolution of that broad concept of the Carmack Amendment is drafted to be broad enough to encompass all damages. The Macher case is also distinguishable because in that case, we've got a railroad passenger, which is sort of akin to, it removes us from the case in front of the court here because here we have someone as an employee of the consignee directly involved in the movement. Whereas in the Macher case, it is a customer, a passenger of the railroad. Let me ask you a hypothetical. Suppose that this same truck had been negligently loaded, the cargo was negligently loaded, so that the load shifted when it was going around a curve. And as a result, the truck hit a child on the sidewalk. Would that child's claim be preempted by the Carmack Amendment? No, Your Honor. What is the difference? So as to play out that scenario, as to XPO, if it was still functioning in its role as a carrier as it is in this case, I think there would be a Carmack Amendment for XPO, Carmack Amendment argument for XPO. As to the actual delivering carrier, which in this case was Magnum, it's my position they would not have a Carmack Amendment defense because once the load leaves the shipper's area, it becomes the delivering carrier's responsibility for load securement. And if the load shifted and, like you say, caused the trailer to tip onto a third person member of the public, no, the Carmack Amendment would not apply to shield the motor carrier in that context. That'd be state tort law. It'd be outside of the transaction between shipper, motor carrier, whether that's receiving or delivering carrier, and the consignee. So I'm not following. So if it's in transit, it's not preempted. But if it happens at the loading dock, it's preempted? No, if it's part of the overall transaction between shipper and consignee, if it's within that, and the conduct giving rise to the alleged harm takes place within that transaction, Carmack Amendment applies. The reason we're not going to see it with a kid on the side of the road, as you've premised it, is he's removed from the transaction of shipper, consignee. And so the district court properly found that under the undisputed material facts, the Carmack Amendment preempted each of Fergan's negligence claims against XBO. Each of his allegations pertain to stacking the pallets, loading the pallets. What case has ever held that Carmack preempts a third party's personal injury claim against the carrier? Your Honor, there is a case with facts that are pretty similar. It involves the shipment of LEGOs, if I can find it here. Eastern District of Pennsylvania. Correct. Oh, yeah, that one. Thank you. That is the case we were able to find that was directly on point. And so each of the allegations against XBO in this case relate to the loading of the product, the conduct that was the integral part of XBO's involvement in this shipment. And for that reason, we would ask the court to affirm the district court's summary judgment in favor of XBO. Thank you, Mr. Moran. Thank you. Mr. Moyer? Moyer? Oh, I'm sorry. We've got two police here. Please excuse me. Mr. Olson. Thank you. Two appellees, and we've agreed to split the time 8 and 7. Steve Olson appearing on behalf of the Magnum defendants. Judge Loken, your question about was there a remedy in the court below? The plaintiff sued the seller of the goods, a company by the name of Westrock, in addition to Magnum and XBO. The seller of the goods, Westrock, was dismissed on a motion. I believe it was for summary judgment. The court found that because XBO had answered in their either request for admissions or interrogatories that the goods and the pallets were in good shape when they accepted delivery of them, the court therefore held that there's no way that a reasonable finder of fact could have found XBO was negligent and therefore dismissed them. So, and I'm coming to answer your question, Your Honor. The plaintiff asserted negligence theory. That's the only theory that they asserted. I would suggest that there were other theories available to the plaintiff that they did not utilize, and those would be strict liability in court or breach of warranty. And not- How can those not be preempted if negligence is? We're talking about, you wanted to know if they had a remedy. They would have a remedy against the seller of the goods under those two theories. The seller- Well, but no, I want a remedy. I want a remedy against the party that's at fault. The answer to your question is then I would reaffirm what Mr. Moran said, is that their remedy is the workman's compensation claim. And if the comp commission said you weren't employed by them, then it's no remedy? I suppose that's possible, but that's not what happened in this case. The comp carrier is aligned with the plaintiff in this case, and they are a party to this lawsuit. And they're not here today, but they are a party to the lawsuit, Ace American Insurance Company. Counsel, how do you get around the language in the statute that refers to persons entitled to recover under the receipt or bill of lading? And I don't see how Mr. Fergan is so situated. Well, I would refer to the district court's opinion, and they relied upon the Fulton case in this language. The cases make it clear that when damages are sought against a common carrier for failure to properly perform or for negligent performance of an interstate contract of carriage, the Carmack Amendment governs. And the Carmack Amendment basically creates strict liability for the carriers. As long as the goods are delivered free of defects, they are on the hook if the goods are damaged. And then the language in the statute says that the liability imposed under this paragraph is for actual loss or injury to the property. And so in return for the strict liability, the carrier gets that reduced liability for just the actual loss of injury to the property. Right, but Mr. Fergan is not property. He's a person. That's correct. But in return for that, the liability is limited at that. And I would suggest what Mr. Moyer and what the court is kind of indicating here is that they think the slate is clean here. And that we can ignore the Supreme Court cases. The statutory language is clear. Well, and the language that the Supreme Court says and that Mr. Moran mentioned indicates that it embraces all losses resulting from any failure to discharge the carrier's duty. That's pretty broad. And I think that's what the. What Supreme Court case was that? Georgia, Florida, and Alabama Railway Co. versus Blish Milling Co. 241 US 190. And isn't that the duty within the contract and not duty to someone who isn't a part of it? The statement is broad enough there that it would include. That was a property damage case. Other circuits have relied. Power. Other circuits. Initial carrier's bill of lading control. And other circuits have relied upon that to adopt the conduct theory. And I would suggest that it's a. In any situation other than a shipper's claim for emotional distress type. Well. Bad faith processing of claims context. The case that Mr. Moran referred to was not a circuit court. But it was from Krauss versus Iris USA, Inc. Well, gee, the Eastern Pennsylvania is never wrong, of course. But I know they're not controlling. That's true. But they provide a good. Fulton could not be worse dicta to rely on. First off, and I mean Fulton. Fulton was dicta and the discussion relied on. And then our court went on and said, in any event, there's two other reasons why there's long arm jurisdiction here. So the notion that Fulton somehow signed on to one side or another of these emotional distress other circuit cases is, frankly, absurd. Counsel, I think you prevail if the employee of the consignee, Mr. Fergin, is treated as the consignee for purposes of the Carmack Amendment. But how can we do that? Well, he was doing something within the scope of his job. And his employer requested that he do it. Therefore, I would say anybody that fits within that scope is a consignee. I'm running short on time, but there's two really important points here that I want to address. You brought up the point about the child and the injury. I want to mention that I don't think the Carmack Amendment would preempt that in certain situations. And I want to cite you the statute that I think may apply. It's 49 United States Code, 14704A2, and it's very short. And I'm going to read it. A carrier or broker providing transportation or service subject to jurisdiction under Chapter 135 is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of that act. That part, I think that would apply here because there are securement regulations in 49 CFR 392B. And those would apply under here. Now, the reason they don't apply in this case is because within that same CFR, they say they don't apply to unloading or loading. And the term accident just refers to a public highway. So I think that's why it doesn't apply here. But I think in this situation that you described, Judge, public highway, cargo shifts, damaging or killing the child, that that would apply. The other thing I want to mention is, of course, we're relying upon this broad language from the Supreme Court. And I understand that you disagree about that that may be dicta, Judge Locan. But I want to point out that the Carmack Amendment has been in existence for a long time. It started out with railroads, moved on to shippers in the 30s with, I think they called it the Hepkin Amendment. And Congress has never really changed that language. So I think it's reasonable to think that they've acquiesced in that language from the Supreme Court. I think they thought Adams got it right the first time the Supreme Court explained at great length the history that led to the amendment. And the need to promote interstate commerce by giving carriers the ability to limit their risk and set their rates accordingly. That's the whole business. In the whole 19th century to get there. In 1995, Congress amended the whole transportation industry. They adopted the ICC Termination Act. And they split up Carmack. There's one now for railroads and one for motor carriers. And as part of that, they added a 49 United States code. And I say this on page 16 of the brief. 49 United States code 1310223B. And that defines services. And the services are included arranging for receipt, delivery, elevation, transfer, and transit, storage, handling, packing, and unpacking of cargo. Counselor, your time's expired. Yeah. Thank you. Thank you. Mr. Moyer. Thank you. I also do a little workers' compensation work. And the first thing I always tell a client who comes to me with a workers' compensation case is that the Nebraska legislature has seen fit to call this workers' compensation. But the first thing you must understand is that it's not compensatory. This man has a right, I believe, under our statutory structure to his full tort damages, which includes more than just workers' compensation and includes a lot of things that can't be recovered in workers' compensation. So I'll leave you with that thought. This man was not a carrier. He was not a consignor. He was not a consignee. He did not load the goods. And he had no remedy under the bill. He was an employee of the consignee? Is that correct? He was an employee of the consignee. So what would we impute from that arrangement to him?  been damages to the product. But he's not the product. And that's the main issue in this case is that he's not connected to the Carmack Amendment. And he has a right to his common law action for personal injuries. Thank you. Thank you, Mr. Moyer. Thank you also at police counsel. Court wishes to thank all of you for your presence before the court today and the arguments you provided us. We'll take your case under advisement. Madam Clerk, I believe that concludes the docket for the morning. Yes, Your Honor. That being the case, court will be in recess until tomorrow morning at 9 AM. Thank you.